FILED
SEPTEMBER 22, 2016
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 33275-6-III |
| DAVID MAULEN, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| NANCY PIMENTEL, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — The trial court dissolved the marriage between Nancy Pimentel

and David Maulen and awarded primary residential custody of their two children to Mr.

Maulen. The court also allocated the long-distance transportation costs for visitation

equally between the parents. Ms. Pimentel appeals, arguing (1) that the trial court

entered insufficient findings of fact supporting the residential placement decision, and (2)

that the trial court erred when it failed to allocate the long-distance transportation costs in

the same proportion as the parents' basic child support obligation. We affirm the trial court's residential placement decision, but remand for clarification on the issue of transportation costs.

## FACTS AND PROCEDURAL HISTORY

David Maulen and Nancy Pimentel married in 2003 and separated in 2006. As a result of their relationship, they have two children: a daughter, E.M., and a son, D.M. During their marriage, Mr. Maulen was employed by the military, but began working for the Othello Police Department in 2011, and was still working there at the time of trial. Ms. Pimentel moved to Kentucky in 2012.

In December 2013, Mr. Maulen filed a petition for dissolution of the marriage. After a one-day trial on February 26, 2015, counsel for both parties gave closing argument, in which they addressed each of the seven statutory factors in RCW 26.09.187(3)(a) and the evidence supporting them. Thereafter, the trial court awarded primary residential custody of the children to Mr. Maulen. Its oral ruling was brief:

> [COURT:]    I think the evidence shows that they're both very good parents.
>             I believed every word that Mr. Maulen said in his testimony. . . .
>             . . . .
>             I think that [Mr. Maulen] and his significant other are the parents who are most attentive to the children's medical and educational issues. I think that they are more likely to put their trust in professionals and to make calculated health and education decisions as opposed to default decisions.
>             I think the children are probably equally integrated into both homes. But I'm going to award primary residential responsibility to Mr. Maulen.
>             I'm not basing my decision one iota on Ms. Pimentel's lack of citizenship

2

or lesser financial status. I just think that Mr. Maulen's philosophy of parenting and his lifestyle are much more stable than Ms. Pimentel's lifestyle which seems to be a little peripatetic. I put a, you know, some of the things that you make your decisions on are just small things that tell you a lot about somebody. Ms. Pimentel told me that—that their son received an F in something, but she didn't know whether it was reading or math. I would remember whether if it was reading or math and I think Mr. Maulen would remember too. That's the type of detail that's a telling detail. I don't think Ms. Pimentel loves these kids one iota less than Mr. Maulen does, but I like the stability of his lifestyle.

Report of Proceedings (RP) at 176-78.

The court also ordered that Mr. Maulen pay roughly 87 percent of the children's total child support, and that Ms. Pimentel cover the other 13 percent. In doing so, the court deviated from the standard support calculation and decreased the amount Ms. Pimentel was to contribute from $369.68 to $172.94. The reason for the deviation was the fact that Ms. Pimentel has five other children.

The court ordered that Ms. Pimentel have visitation if she is in Washington on the last full week of every month, and every other weekend. The children are to reside with Ms. Pimentel every summer break and during winter break on odd numbered years. The court ordered payment for the long-distance transportation costs as follows:

[COURT:] Now the geography gives me a problem. I can't see making [Mr. Maulen] the primary custodial parent and giving [Ms. Pimentel] every other weekend because she's obviously not going to be here every other weekend. . . .
Travel shall be at her expense and she will notify [Mr. Maulen] in advance in writing at least ten days in advance of her intention to exercise that every other month visitation.

3

She will also have the children to herself every June 15th through August 1st commencing this year. She will pay for the flight or for the transportation of expenses to her house, and Mr. Maulen will pay for the return for that.

. . . .

I want her to be excused from child support each year in May so she can save her money for tickets.

RP at 178-80.

Ms. Pimentel appeals.

## ANALYSIS

On appeal, Ms. Pimentel argues (1) that the trial court did not enter sufficient findings of fact to show it considered the seven statutory factors when it made the residential placement decision, and (2) that the trial court erred when it did not allocate the long-distance transportation costs in the same proportion as the parents' basic child support obligation. Each argument is addressed in turn.

1. *The trial court properly addressed the seven factors in RCW 26.09.187(3) when it made residential provisions for the children.*

Ms. Pimentel argues the trial court erred in awarding primary residential placement of E.M. and D.M. to Mr. Maulen because it did not properly analyze the statutory factors, nor enter sufficient findings to allow for appellate review.

In fashioning a residential schedule, the trial court must consider seven factors:

(i) The relative strength, nature, and stability of the child's relationship with each parent;
(ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;

4

        (iii) Each parent's past and potential for future performance of parenting functions as defined in RCW 26.09.004(3), including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;
        (iv) The emotional needs and developmental level of the child;
        (v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;
        (vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and
        (vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

RCW 26.09.187(3)(a) (reviser's note omitted). The court must give the greatest weight to the first factor. *Id.* Additionally, a trial court's decision regarding residential placement must be made with the best interests of the child in mind after considering the factors found in RCW 26.09.187(3). *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993).

Appellate courts "are reluctant to disturb a child custody disposition because of the trial court's unique opportunity to personally observe the parties." *In re Marriage of Murray*, 28 Wn. App. 187, 189, 622 P.2d 1288 (1981). Accordingly, a trial court's residential placement decision is reviewed for abuse of discretion. *Kovacs*, 121 Wn.2d at 801. "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds" or reasons. *Id.*

Ms. Pimentel contends the trial court erred by not entering specific findings regarding each factor under RCW 26.09.187(3) as required by CR 52. Under CR

52(a)(2)(B), the trial court must enter findings and conclusions "[i]n connection with all final decisions in . . . custody, and divorce proceedings." When the trial court's written findings of fact do not clearly reflect consideration of the statutory factors, the appellate court may review the trial court's oral opinion. *Murray*, 28 Wn. App. at 189. When "the record indicates substantial evidence was presented on the statutory factors thus making them available for consideration by the trial court and for review by an appellate court, specific findings are not required on each factor." *In re Marriage of Croley*, 91 Wn.2d 288, 292, 588 P.2d 738 (1978). "In absence of evidence to the contrary, we assume the trial court discharged its duty and considered all evidence before it." *Id.* at 291.

This results in a two-part inquiry: (a) whether the record contains substantial evidence on each statutory factor, and (b) whether the record reflects that the trial court considered the statutory factors when making its residential placement decision. If the answer to both of these inquiries is affirmative, the trial court is not required to make specific findings of fact on each statutory factor.

a. The record contains substantial evidence on each statutory factor

With regard to the first factor (the relative strength, nature, and stability of the children's relationship with each parent) the record contains substantial evidence. It demonstrates that each parent has spent significant amounts of time with the children, and that both have made attempts to help D.M., particularly, with his difficulties in school. As to stability, the record shows Ms. Pimentel moved the children from Texas to

California, where she moved in and out of her parents' home on multiple occasions, and eventually relocated to Kentucky. Mr. Maulen, on the other hand, moved three times between 2007 and 2012, and has been settled in Othello since 2011.

On the second factor (agreements between the parties) the record contains Mr. Maulen's testimony that he and Ms. Pimentel had agreed to alternate the children every other year. Ms. Pimentel denied such an agreement existed.

On factors three and four (past and future performance of parenting functions, and the emotional and developmental needs of the child) the record contains substantial evidence. Both parents testified to the medical and educational issues specific to D.M. Mr. Maulen testified he noticed D.M.'s grades were poor and that D.M. had trouble concentrating. As a result, he took D.M. to the doctor, who diagnosed him with attention deficit hyperactivity disorder (ADHD) and prescribed medication, which Mr. Maulen had D.M. take. D.M.'s teachers reported that D.M. was better able to concentrate after starting the medication.

Ms. Pimentel, without requesting the medical records from the doctor in Washington, took D.M. to the doctor in Kentucky. D.M., who was 10 years old at the time, saw the doctor alone because Ms. Pimentel had her other six children in the waiting room. The doctor concluded that D.M. did not have ADHD and that medication was unnecessary. Accordingly, Ms. Pimentel did not keep D.M. on medication. Ms. Pimentel testified that D.M. was struggling with reading but was getting tutoring.

7

On another occasion, D.M. had a fight with another student and one of his adult teeth had fallen out. Mr. Maulen took him to the dentist, who gave him a flipper to keep the other teeth properly spaced until D.M. had grown enough to insert a permanent tooth. Ms. Pimentel testified she does not require D.M. to wear the flipper because she took him to the dentist when the flipper did not fit anymore, and the dentist told her D.M. did not need it. The record also demonstrates that Ms. Pimentel could not remember whether D.M. had an F in math or reading.

Substantial evidence exists on the fifth factor: the children's relationships with siblings, other significant adults, and their community in general. The record shows the children have spent significant amounts of time with both parents, and are involved in both communities. They have a church that they are involved in at each location, and E.M. participates in an art program in both states and a dance team in Washington.

On the sixth factor (the wishes of the parents and children) the record shows both parents wanted primary custody, but there was no evidence of the children's wishes.

With regard to the seventh factor (each parent's employment schedule) the record shows both parents are available to care for the children. Between Mr. Maulen and his fiancé, they are able to be at home with the children except for one or two times a month. Ms. Pimentel does not work outside of the home, and is able to be with the children at all times. As shown, the record contains substantial evidence on each statutory factor.

b. <u>The record reflects that the trial court considered the statutory factors</u>

The court's *written* findings do not show the trial court's consideration of the statutory factors set forth in RCW 26.09.187(3). However, the court's oral opinion, given immediately after closing arguments that methodically addressed each factor, while not specifically identifying the statutory factors, reflects appropriate consideration of them.

The court considered and gave the most weight to the first factor, which requires an inquiry into the strength, nature, and stability of the child's relationship with each parent. This is evidenced by the court's statement that both Mr. Maulen and Ms. Pimentel are "very good parents" who love their children. RP at 176. Despite this, the court found the nature of the children's relationship with Mr. Maulen was more "stable," because Ms. Pimentel's lifestyle was "peripatetic." RP at 177. This stability was a strong factor in the court's decision to award Mr. Maulen primary residential custody.

The court did not consider the second factor (agreements between the parties), but both parties conceded at trial that this factor was not dispositive.

The court appropriately considered factors three and four—the parent's ability to perform parenting functions, and the developmental level of the child. The court noted that Mr. Maulen and his fiancé were "most attentive to the children's medical and educational issues." RP at 177. The court compared the parents' medical decisions and concluded Mr. Maulen and his fiancé were more likely than Ms. Pimentel "to put their trust in professionals and to make calculated health and education decisions as opposed to

9

default decisions." *Id.* Also, the court found the fact that Ms. Pimentel could not remember whether D.M. had an F in math or reading an important and telling detail, tending to indicate that Ms. Pimentel was not as attentive to D.M.'s education or as involved in helping to address his specific needs.

The court noted the children were "equally integrated into both homes," which implicates the fifth factor—relationships with siblings, other adults, and the community. RP at 177. The court did not discuss the sixth factor (the wishes of the parents and children), but both parties conceded at trial that this factor was inapplicable. The court did not discuss the seventh factor relating to the parents' employment schedule.

Finally, while the court did not specifically mention the best interests of the children, the oral ruling emphasized providing the children with the caretaker most likely to be attentive to their individual needs and to provide a stable home. These considerations are in line with RCW 26.09.002, which states that "[t]he best interests of the child are served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care." The court's statements demonstrate its consideration of the seven statutory factors.

Ms. Pimentel argues that this case is like *Murray*, in which the court found that though "the trial record contains substantial evidence to provide a basis for analysis of the statutory factors, particularly the child's relationship with others, we cannot find the court made its determination by applying those statutory factors." 28 Wn. App. at 189.

10

Because the trial court's written and oral findings did not reflect consideration of the statutory factors and failed to even mention the best interests of the child, the appellate court refused to apply the presumption that the trial court considered them. *Id.* at 189-90. However, in *Murray* the trial court based its residential placement decision solely on the tender years doctrine, noting only the child's age and need for maternal influence before awarding custody to the mother. *Id.* at 190. There was no indication the court considered any of the statutory factors.

Here, unlike in *Murray*, the court's language indicates it considered the best interests of the children and four of the seven factors. Of the three factors not mentioned, two were inapplicable. The preceding discussion illustrates that the record contains substantial evidence on the statutory factors, and though the trial court did not explicitly mention every factor, it based its decision on consideration of them. The trial court did not abuse its discretion.

2. *Though the trial court was permitted to deviate from the basic support obligation, it should have explained the deviation*

Ms. Pimentel argues that the court did not properly apportion the long-distance transportation costs in accordance with each parent's support obligation.

Special expenses, such as long-distance transportation costs for visitation, are not included in the basic child support obligation. RCW 26.19.080(3). Nonetheless, "long-distance transportation costs to and from the parents for visitation purposes . . . shall be

11

shared by the parents in the same proportion as the basic child support obligation." *Id.*

Where "the court finds grounds to deviate from the basic obligation, it follows that the

court can also allocate transportation costs differently." *In re Marriage of Casey*, 88 Wn.

App. 662, 668, 967 P.2d 982 (1997). The trial court has "discretion to determine the

necessity for and the reasonableness of all amounts ordered in excess of the basic child

support obligation." RCW 26.19.080(4).

First, Ms. Pimentel argues that the court improperly ordered her to pay for her own

transportation if she visited the children in Washington, which would include airfare,

food, and lodging costs. RCW 26.19.080 only applies to the cost of airfare. *In re*

*Marriage of McNaught*, 189 Wn. App. 545, 567, 359 P.3d 811 (2015), *review denied*,

185 Wn.2d 1005, 366 P.3d 1243 (2016) (noting that the statute "explicitly requires

allocation of travel expenses incurred 'to and from' the location and not all costs

associated with long-distance visitation"). With regard to allocating the cost of the

airfare, the court excused Ms. Pimentel from child support payments each year in May so

she could save money for her tickets. Because Ms. Pimentel has five other children, and

because she has no identification documents, the court could have reasonably concluded

that she would be unable to fly to Washington more than once a year, if at all. Still,

relieving her from one monthly payment of $172.94—which amounts to Mr. Maulen

contributing that amount—does not provide her with enough money to cover 87 percent

of a roundtrip ticket.

12

In addition, the court ordered Ms. Pimentel to pay for the cost of transporting E.M. and D.M. to Kentucky, and Mr. Maulen to pay for the cost of transporting them back to Washington. But under the court order, Mr. Maulen is to pay 87 percent of the support obligation, and Ms. Pimentel is to pay the remaining 13 percent. Requiring each parent to pay for one leg of the journey allocates 50 percent of the cost to each parent—a deviation from the parents' proportionate share under the basic support obligation.

The trial court entered a deviation for Ms. Pimentel and subtracted $196.74 from the amount she would have been required to pay under a standard support calculation. This relieved the court from ordering transportation costs to be shared proportionally. However, instead of decreasing the amount Ms. Pimentel was required to pay—which is what the deviation did—the court increased the amount Ms. Pimentel had to contribute to 50 percent. Though the trial court is permitted to deviate from the standard calculation, we remand for the trial court to clarify whether it intended this deviation.

ATTORNEY FEES ON APPEAL

Ms. Pimentel requested attorney fees under RAP 18.1 and RCW 26.09.140, but did not file an affidavit of financial need within the time frame required by RAP 18.1(c).

We affirm the trial court's residential placement order but remand on the issue of long-distance transportation costs.

13

No. 33275-6-III
*In re the Marriage of Maulen and Pimentel*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, J.

14